1   **HUNTON ANDREWS KURTH LLP**
2   Ann Marie Mortimer (State Bar No. 169077)
    amortimer@HuntonAK.com
3   Jason J. Kim (State Bar No. 221476)
    kimj@HuntonAK.com
4   Brandon M. Marvisi (State Bar No. 329798)
    bmarvisi@HuntonAK.com
5   550 South Hope Street, Suite 2000
    Los Angeles, California 90071-2627
6   Telephone:  (213) 532-2000
7   Facsimile:  (213) 532-2020
8

9   **HUNTON ANDREWS KURTH LLP**
10  Neil K. Gilman (*pro hac vice*)
    ngilman@HuntonAK.com
11  2200 Pennsylvania Avenue, NW, Suite 900
    Washington, DC 20037-1701
12  Telephone:  (202) 955-1500
    Facsimile:  (202) 778-2201
13
14
    Attorneys for Defendant
15  THE NEIMAN MARCUS GROUP LLC

16              **UNITED STATES DISTRICT COURT**
17              **CENTRAL DISTRICT OF CALIFORNIA**

18  CHRISTINA ZAIMI, individually. and          CASE NO.:  2:22-cv-02972 AB (SKx)
19  on behalf of all others similarly situated,
                                                 **THE NEIMAN MARCUS GROUP**
20            Plaintiffs,                        **LLC'S NOTICE OF MOTION AND**
                                                 **MOTION TO COMPEL**
21                                               **ARBITRATION**
        v.
22
                                                 *[Declaration of Vijay Karthik and*
23  THE NEIMAN MARCUS GROUP,                     *[Proposed] Order filed concurrently*
24  LLC, a Delaware limited liability            *herewith]*
    company; and DOES 1-50, inclusive,
25
            Defendants.                          Date:      August 26, 2022
26                                               Time:      10:00 a.m.
27                                               Judge:     Hon. André Birotte Jr.
28                                               Ctrm:      7B

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California90071-2627

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on August 26, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7B of the above-entitled Court, located at 350 West First Street, Los Angeles, California, Defendant The Neiman Marcus Group LLC ("Neiman Marcus") will move this Court for an order compelling Plaintiff to arbitrate the arbitrability of her claims or, in the alternative, compelling individual arbitration of Plaintiff's claims.  In connection therewith, Neiman Marcus seeks an order dismissing this action with prejudice or, in the alternative, staying this action pending the completion of individual arbitration proceedings.

This motion is made under the Federal Arbitration Act on the grounds that Plaintiff expressly agreed to arbitrate the arbitrability of her claims and to arbitrate such claims with Neiman Marcus on an individual basis when she agreed to Neiman Marcus' "Privacy Policy & Terms of Use"—*i.e.*, the same agreement Plaintiff claims Neiman Marcus breached.  FAC at n.19.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 27, 2022.[1]  Counsel for the parties spoke again on June 14, 2022 and agreed Neiman Marcus would refile its motion in light of ECF No. 25 (striking Neiman Marcus' motion), and that the parties would proceed under the briefing schedule ordered by the Court (ECF No. 13).

---

[1] The Court struck Neiman Marcus' motion to compel arbitration because it did not include the certification required under Local Rule 7-3, which Neiman Marcus now includes in this refiled motion.  ECF No. 25.  As stated above, before Neiman Marcus filed its motion, the parties met and conferred on April 27, 2022.  Neiman Marcus notified Plaintiff's counsel that it would be moving to compel arbitration pursuant to the arbitration provision in its online terms, and Plaintiff's counsel indicated Plaintiff would oppose the motion.  The parties therefore agreed to a briefing schedule specifically with respect to the motion to compel arbitration, which was filed as a stipulation and entered by the Court.  ECF Nos. 9 & 13.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Vijay Karthik filed concurrently herewith, all the pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter.

Dated:  June 14, 2022                              **HUNTON ANDREWS KURTH LLP**

By:    /s/ Ann Marie Mortimer
       Ann Marie Mortimer
       Jason J. Kim
       Brandon M. Marvisi
       Attorneys for Defendant
       THE NEIMAN MARCUS GROUP
       LLC

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................1

II.  FACTS ..............................................................................................................1

    A.  Plaintiff Agreed To Neiman Marcus' Terms When She Signed Into Her Account, Built Online Orders, And Made Online Purchases ..................1

    B.  Neiman Marcus' Terms Include An Arbitration Provision ......................3

    C.  Plaintiff Violated Her Arbitration Agreement By Filing This Putative Class Action In Court ...............................................................................4

III.  LEGAL STANDARD .......................................................................................5

IV.  PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE...........................6

    A.  The FAA Applies .....................................................................................6

    B.  Plaintiff Agreed To Arbitrate Arbitrability .............................................6

    C.  Even If The Court Decides Arbitrability, Plaintiff Cannot Avoid Her Agreement To Arbitrate .........................................................................10

        1.  The Parties' Arbitration Agreement Is Valid And Enforceable ....10

        2.  The Arbitration Agreement Covers Plaintiff's Claims.................11

    D.  Plaintiff's Class Claims Cannot Proceed ..............................................12

    E.  The Lawsuit Should Be Dismissed—Or At The Very Least Stayed— Pending Arbitration Of Plaintiff's Individual Claims............................13

V.  CONCLUSION ...............................................................................................14

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
 513 U.S. 265 (1995) ................................................................................ 6

*Am. Express Co. v. Italian Colors Rest.*,
 133 S. Ct. 2304 (2013) ........................................................................... 13

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ................................................................... 5, 11, 13

*Azoulai v. La Porta*,
 2016 WL 9045852 (C.D. Cal. Jan. 25, 2016) ....................................... 13

*Bogle v. Wonolo Inc.*,
 2022 WL 1124973 (C.D. Cal. Apr. 8, 2022) ..................................... 6, 10

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015) ................................................................ 7

*Britt v. ContextLogic, Inc.*,
 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) .......................................... 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ................................................................ 6

*Crawford v. Beachbody, LLC*,
 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .......................................... 9

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985) ................................................................................ 5

*Delgado v. Progress Fin. Co.*,
 2014 WL 1756282 (E.D. Cal. May 1, 2014) ......................................... 12

*DeVries v. Experian Info. Sols., Inc.*,
 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) .......................................... 9

*Diaz v. Tesla Energy Operations, Inc.*,
 2021 WL 3912271 (C.D. Cal. Sept. 1, 2021) ......................................... 7

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*DIRECTV, Inc. v. Imburgia,*
    136 S. Ct. 463 (2015)...................................................................................13

*Dohrmann v. Intuit, Inc.,*
    823 F. App'x 482 (9th Cir. 2020).................................................................8

*Garrett v. Hooters of Am., LLC,*
    2022 WL 347619 (S.D. Tex. Jan. 5, 2022)................................................11

*Graf v. Match.com, LLC,*
    2015 WL 4263957 (C.D. Cal. July 10, 2015) .......................................9, 13

*Green Tree Fin. Corp.-Ala. v. Randolph,*
    531 U.S. 79 (2000).......................................................................................6

*Henry Schein Inc. v. Archer & White Sales Inc.,*
    139 S. Ct. 524 (2019)...................................................................................6

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002).....................................................................................10

*Koyoc v. Progress Fin. Co.,*
    2014 WL 1878903 (C.D. Cal. May 9, 2014)..............................................12

*Lee v. Ticketmaster L.L.C.,*
    817 F. App'x 393 (9th Cir. 2020).................................................................8

*Lewis v. UBS Fin. Servs. Inc.,*
    818 F. Supp. 2d 1161 (N.D. Cal. 2011).....................................................13

*Mortensen v. Bresnan Commc'ns, LLC,*
    722 F.3d 1151 (9th Cir. 2013) .....................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)..............................................................................5, 10, 11

*Oracle Am., Inc. v. Myriad Grp., A.G.,*
    724 F.3d 1069 (9th Cir. 2013) .....................................................................6

*Peter v. DoorDash, Inc.,*
    445 F. Supp. 3d 580 (N.D. Cal. 2020).........................................................9

*Rent-A-Center, W., Inc. v. Jackson,*
    561 U.S. 63 (2010).......................................................................................6

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Rivera v. UHS of Delaware, Inc.*,
    2015 WL 13685336 (C.D. Cal. Nov. 30, 2015) ....................................11

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ...............................................................13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..............................................................................12

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011).............................................8, 10

*Tate v. Progressive Fin. Holdings, LLC*,
    2017 WL 4804354 (C.D. Cal. Oct. 24, 2017) ......................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 2650689 (N.D. Cal. July 6, 2011) ........................................12

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) .................................................................6

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ...........................................................9

**Statutes**

9 U.S.C. § 2 ....................................................................................................6

9 U.S.C. § 4 ....................................................................................................6

**Other Authorities**

AAA Rule 1(a)(3) ...........................................................................................7

AAA Rule 14(a) ..............................................................................................7

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Christine Zaimi filed this lawsuit following a September 30, 2021 announcement by The Neiman Marcus Group LLC ("Neiman Marcus") that an unauthorized party obtained information associated with certain of its customers' online accounts.  While the information varied by customer, at most, it included names, contact information, payment card information (without CVV numbers), virtual gift card numbers (without PINs), and the username, password, and security questions and answers associated with certain customers' online Neiman Marcus accounts.  And even if the payment and virtual gift cards in question could be used without CVV or PIN numbers, more than 85 percent of them were expired or otherwise invalid, and more expire each day.  Even a cursory review of Plaintiff's first amended complaint ("FAC") reveals deficiencies ranging from her inability to plead cognizable damages to her inability to otherwise state viable claims.

But the Court need not even resolve those issues because Plaintiff agreed to arbitrate them.  Neiman Marcus' online terms of use (the "Terms") require individuals to arbitrate on an individual basis the very claims Plaintiff asserts here (the "Arbitration Agreement").  And Plaintiff agreed to those Terms on multiple occasions—when she signed into her online Neiman Marcus account, when she built online orders, and when she made online purchases.  As demonstrated below, Plaintiff's claims fall squarely within the scope of the Arbitration Agreement, and she should be compelled to arbitrate them on an individual basis—just as she agreed.

## II.   FACTS

### A.   Plaintiff Agreed To Neiman Marcus' Terms When She Signed Into Her Account, Built Online Orders, And Made Online Purchases

Plaintiff claims she "made several purchases" during the relevant timeframe "through Neiman Marcus' website" and "her Neiman Marcus online account."  FAC ¶ 11.  In fact, Plaintiff did so on multiple occasions according to Neiman Marcus'

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

records.  Declaration of Vijay Karthik ("Karthik Decl.") ¶ 4, Exh. B (Purchase Order Records).  And when she did so, Plaintiff agreed to Neiman Marcus' Terms of Use. *Id.*, Exh. A (Terms), at 4.

For example, when Plaintiff built online orders and made online purchases through Neiman Marcus' website on July 21, 2020, February 26, 2021, March 30, 2021, April 22, 2021, she "agree[d] to [Neiman Marcus'] Privacy Policy and Terms & Conditions":



Karthik Decl., Exhs. D-G (Sign In & Checkout Screenshots); *see also id.* ¶ 6.  As shown above, Plaintiff could not sign into her Neiman Marcus account and check out without clicking on a "SIGN IN & CHECKOUT" button.  *Id.*  Plaintiff was told, just below that "SIGN IN & CHECKOUT" button, that, "[b]y continuing, you agree to our Privacy Policy and Terms & Conditions."  *Id.*  As shown above, both the "Privacy Policy" and "Terms & Conditions" are prominently displayed as blue hyperlinks that can be viewed by clicking on them.  *Id.*

Plaintiff also received notice of Neiman Marcus' "Privacy Policy" and "Terms & Conditions" when she signed into her account on her mobile device—for example, when she did so on November 16, 2021:

/ / /

/ / /

/ / /

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2

Karthik Decl., Exh. H (Mobile Sign In Screenshot); *see also id.* ¶ 7.  As shown above, Plaintiff could not sign into her Neiman Marcus account without clicking on a "SIGN IN" button.  *Id.*  And Plaintiff was told, just below that "SIGN IN" button, that, "[b]y continuing, you agree to our Privacy Policy and Terms & Conditions."  *Id.*  Both the "Privacy Policy" and "Terms & Conditions" are prominently displayed as underlined hyperlinks that can be viewed by clicking on them.  *Id.*

**B.    Neiman Marcus' Terms Include An Arbitration Provision**

The Terms contains an arbitration agreement (the "Arbitration Agreement") in a conspicuous section entitled, "Disputes."  That section states in full that:

> *Any dispute relating in any way to your visit to our website or*
> *to products purchased here shall be submitted to confidential*

3

THE NEIMAN MARCUS GROUP LLC'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California90071-2627

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*arbitration in Dallas, Texas.*  However, if you have in any manner violated or threatened to violate our intellectual property rights, we may seek injunctive or other appropriate relief in any state or federal court in the State of Texas.  You consent to exclusive jurisdiction and venue in such courts.  *Any arbitration under this agreement shall be conducted under the prevailing rules of the American Arbitration Association.*  The arbitrator's award shall be binding and may be entered as a judgment in any court of competent jurisdiction.  To the fullest extent permitted by applicable law, *no arbitration with respect to this website or to products purchased here shall be joined to an arbitration involving any other party, whether through class arbitration proceedings or otherwise.*

Karthik Decl., Exh. A (Terms), at 5 (emphasis added).[2]  As highlighted above, the Arbitration Agreement section contains a clear and conspicuous class action waiver, it mandates arbitration of "[a]ny dispute" with Neiman Marcus "relating in any way to your visit to our website or to products purchased here," and it requires that any such arbitration "shall be conducted under the prevailing rules of the American Arbitration Association."  *Id.*

## C.   <u>Plaintiff Violated Her Arbitration Agreement By Filing This Putative Class Action In Court</u>

Plaintiff's claims fall squarely within the scope of the Arbitration Agreement.  As an initial matter, Plaintiff alleges that Neiman Marcus breached its "Privacy Policy & Terms of Use," which contains the Arbitration Agreement.  FAC ¶¶ 35, 76; *see also*

---

[2] Neiman Marcus' mobile terms of use contain the same arbitration provision, and it encompasses disputes relating in any way to "services available through the NM App and general NM App features."  Karthik Decl., Exh. A (Terms), at 6, 14.

4

*id.* at n.19 (citing https://www.neimanmarcus.com/c/Assistance/Privacy-Policy-Terms-of-Use-cat33940739 as the promise allegedly breached).

Beyond that still, Plaintiff's claims relate to her use of Neiman Marcus' "website or to products purchased [t]here." Karthik Decl., Exh. A (Terms), at 5. In particular, Plaintiff's entire lawsuit stems from the Security Incident announced by Neiman Marcus "[o]n or about September 30, 2021." FAC ¶ 2. That Security Incident concerned "personal information associated with certain of our customers' *online* accounts," as stated in the notification cited in FAC at note 1 (https://www.neimanmarcus.com/editorial/security/online-accounts) (emphasis added). And Plaintiff bases her claims on her experiences making online purchases through the Neiman Marcus website and through her Neiman Marcus online account. *Id.* ¶¶ 11-12. Plaintiff's claims, therefore, concern her use of Neiman Marcus' "website or to products purchased [t]here." Karthik Decl., Exh. A (Terms), at 5.

Irrespective of the merits of Plaintiff's claims (and Neiman Marcus submits there are none), they are squarely encompassed by the Arbitration Agreement. Yet, despite Plaintiff's assent to the Arbitration Agreement, she filed this putative class action lawsuit in court. She should be compelled to arbitrate.

## III.   **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and it requires the rigorous enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts."). In short, the United States Supreme Court mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

THE NEIMAN MARCUS GROUP LLC'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

To the extent Plaintiff is even challenging arbitration here, she bears the heavy "burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (*citing Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). Plaintiff cannot meet that burden. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, courts must compel arbitration if a written arbitration agreement exists that encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## IV. PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE

### A. The FAA Applies

The FAA "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Bogle v. Wonolo Inc.*, 2022 WL 1124973, at *2 (C.D. Cal. Apr. 8, 2022) (citations omitted). And the FAA's reach is broad indeed, encompassing transactions "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995). As the Ninth Circuit has held, "use of the internet is intimately related to interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007). And here, Plaintiff's claims relate to the Security Incident disclosed by Neiman Marcus, which concerned certain of its customers' "online accounts." FAC ¶¶ 36, 37. The FAA, therefore, applies.

### B. Plaintiff Agreed To Arbitrate Arbitrability

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. Thus, when parties "clearly and unmistakably" agree to have an arbitrator decide arbitrability, those issues must be referred to the arbitrator. *Henry Schein Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019); *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks

1    the court to enforce, and the FAA operates on this additional arbitration agreement

2    just as it does on any other."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–32 (9th

3    Cir. 2015) ("[A] court must enforce an agreement that, as here, clearly and

4    unmistakably delegates arbitrability questions to the arbitrator.").  And here, the

5    parties did so.

6         *First*, the Arbitration Agreement "clearly and unmistakably" delegates gateway

7    arbitrability issues to the arbitrator—it incorporates the "rules of the American

8    Arbitration Association."  Karthik Decl., Exh. A (Terms), at 5.  Under Rule 14(a) of

9    the AAA Consumer Arbitration Rules,[3] the "arbitrator shall have the power to rule on

10   his or her own jurisdiction, including any objections with respect to the existence,

11   scope, or validity of the arbitration agreement or to the arbitrability of any claim or

12   counterclaim."  "The Ninth Circuit has held that the incorporation of a third party

13   arbitration organization's rules 'constitutes clear and unmistakable evidence that

14   contracting parties agreed to arbitrate arbitrability.'"  *Diaz v. Tesla Energy*

15   *Operations, Inc.*, 2021 WL 3912271, at *2 (C.D. Cal. Sept. 1, 2021) (quoting

16   *Brennan*, 796 F.3d at 1130 ("[I]ncorporation of the AAA rules constitutes clear and

17   unmistakable evidence that contracting parties agreed to arbitrate arbitrability.")); *see*

18   *also Brennan*, 796 F.3d at 1130-31 ("Indeed, the vast majority of the circuits hold that

19   incorporation of the AAA rules constitutes clear and unmistakable evidence of the

20   parties' intent do so without explicitly limiting that holding to sophisticated parties or

21   to commercial contracts.").

22        *Second*, Plaintiff assented to that delegation provision.  Plaintiff admits she

23   "entered into express contracts with" Neiman Marcus.  FAC ¶ 75.  And the only

24   "express contract" referenced in the FAC is Neiman Marcus' "Privacy Policy &

25   Terms of Use," which contains the Arbitration Agreement.  *Id.* ¶ 35; *see also id.* at

26

27   _____

28   [3] AAA applies its "Consumer Arbitration Rules" to arbitration agreements that are
     "contained within a consumer agreement."  AAA Rule 1(a)(3), available at:
     https://www.adr.org/Rules.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California90071-2627

1   n.19.  Indeed, Plaintiff alleges a "breach of contract" based on her allegation that

2   Neiman Marcus expressly "promise[d] to protect nonpublic personal information

3   given to [Neiman Marcus] or that [Neiman Marcus] gathered on its own, from

4   disclosure." *Id.* ¶ 76.  Plaintiff cites the supposed source of that "promise"—Neiman

5   Marcus' privacy policy.  *Id.* ¶ 35.  That privacy policy is contained in Neiman

6   Marcus' "Privacy Policy & Terms of Use," which, again, contains the Arbitration

7   Agreement.  *Id.* at n.19 (citing https://www.neimanmarcus.com/c/Assistance/Privacy-

8   Policy-Terms-of-Use-cat33940739).

9        Plaintiff cannot possibly claim she agreed to the privacy policy within Neiman

10  Marcus' "Privacy Policy & Terms of Use," but not the Terms within that same

11  document.  And there is no basis for Plaintiff to do so in any event.

12       As shown above, "Plaintiff was provided with an opportunity to review the

13  [Terms] in the form of a hyperlink immediately [below] the ['SIGN IN &

14  CHECKOUT' and 'SIGN IN'] button[s]."  *Swift v. Zynga Game Network, Inc.*, 805 F.

15  Supp. 2d 904, 912 (N.D. Cal. 2011).  Moreover, Plaintiff could not have signed into

16  her Neiman Marcus online account and made online purchases without clicking that

17  button.  *See* Karthik Decl. ¶ 6, Exhs. D-G (Screenshots).  And Plaintiff did so on

18  multiple occasions, as demonstrated above.  *Id.* ¶ 4; Exh. B (Purchase Order Records).

19       Courts routinely find hyperlinked terms of service are binding in these

20  circumstances, and the Court should do so here.  *See*, *e.g.*, *Dohrmann v. Intuit, Inc.*,

21  823 F. App'x 482, 484 (9th Cir. 2020) (user bound by online terms where sign-in page

22  stated:  "By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms

23  of Use and have read and acknowledged our Privacy Statement."); *Lee v. Ticketmaster

24  L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (plaintiff "validly assented to

25  Ticketmaster's Terms of Use, including the arbitration provision, each time he clicked

26  the 'Sign In' button when signing into his Ticketmaster account, where three lines

27  below the button, the website displayed the phrase, 'By continuing past this page, you

28  agree to our Terms of Use,' as well as each time he clicked the 'Place Order' button

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California90071-2627

THE NEIMAN MARCUS GROUP LLC'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION

when placing an order for tickets, where directly above the button, the website displayed the phrase, 'By clicking 'Place Order,' you agree to our Terms of Use,' where in both contexts, 'Terms of Use' was displayed in blue font and contained a hyperlink to Ticketmaster's Terms."); *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (finding assent to arbitration provision in hyperlinked terms of service: "The notices on Amazon's checkout and account registration pages, which alerted Wiseley that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms."); *Britt v. ContextLogic, Inc.*, 2021 WL 1338553, at *1 (N.D. Cal. Apr. 9, 2021) (finding assent to arbitration provision in hyperlinked terms of service where mobile sign in page stated: "By clicking 'Login' or 'Facebook' or 'Google' you agree to the Wish Terms of Use and Privacy Policy."); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (finding assent to arbitration provision where hyperlinked terms and conditions were presented in contrasting color below "Sign In" button: "By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement"); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017) (user bound by arbitration provision when website stated: "Click 'Submit Secure Order' to accept the [hyperlink] Terms and Conditions above, acknowledge receipt of our [hyperlink] Privacy Notice and agree to its terms, confirm your authorization for ConsumerInfo.com, Inc., an Experian company, to obtain your credit report and submit your secure order"); *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) ("[A]ll users of the Match.com website during the relevant time period were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review."); *Crawford v. Beachbody, LLC*,

2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (customer bound by online terms of service when website stated that, "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions"); *Swift*, 805 F. Supp. 2d at 908, 912 (user bound by arbitration provision when website stated: "By using YoVille, you also agree to the YoVille [hyperlink] Terms of Service"). There is no reason or basis to deviate from this long line of cases. Indeed, as explained above, Plaintiff has sued Neiman Marcus for allegedly breaching its privacy policy, which is contained within the same "Privacy Policy & Terms of Use" as the Arbitration Agreement. She plainly had notice. Plaintiff should be ordered to arbitrate arbitrability, as she clearly and unmistakably agreed to do.

**C.** **Even If The Court Decides Arbitrability, Plaintiff Cannot Avoid Her Agreement To Arbitrate**

Even if the Court declined to enforce the parties' agreement to arbitrate arbitrability (which it should not), the Court nonetheless should compel arbitration of Plaintiff's claims on an individual basis. In situations where parties delegate arbitrability questions to the Court, the Court's role under the FAA remains limited to deciding: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). In deciding those questions, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Moreover, Neiman Marcus need only show the "existence of an agreement to arbitrate by a preponderance of the evidence." *Bogle*, 2022 WL 1124973, at *2 (citation omitted). As shown below, both elements are met here: (1) a valid agreement to arbitrate exists; and (2) the agreement covers this dispute.

**1.** **The Parties' Arbitration Agreement Is Valid And Enforceable**

"California law requires four elements to form a valid contract: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

consideration." *Rivera v. UHS of Delaware, Inc.*, 2015 WL 13685336, at *2 (C.D. Cal. Nov. 30, 2015).[4] Those elements are present here.

*First*, there is no dispute Plaintiff and Neiman Marcus are capable of contracting; indeed, Plaintiff claims she "entered into express contracts with" Neiman Marcus, thus conceding the parties' capacity to contract. FAC ¶ 75.

*Second*, as explained above, individuals who create Neiman Marcus accounts or make online purchases assent to Neiman Marcus' Terms—including the Arbitration Agreement therein. Courts routinely have found valid and binding agreements to arbitrate in those circumstances. *See* supra Section IV(B). Similarly, as stated above, Plaintiff admits she "entered into express contracts with" Neiman Marcus, thus conceding the parties' capacity to contract. FAC ¶ 75. And the only "express contract" referenced in the FAC is Neiman Marcus' "Privacy Policy & Terms of Use," which contains the Arbitration Agreement. *Id.* ¶ 35; *see also id.* at n.19.

*Third*, arbitration agreements (including class action waivers) are lawful. *Concepcion*, 563 U.S. at 336, 352.

*Fourth*, ample consideration exists in the form of the parties' mutual promises to forego a judicial determination and to arbitrate their disputes. *Rivera*, 2015 WL 13685336, at *5. The Arbitration Agreement is valid and enforceable, and the Court should enforce it according to its terms.

### 2. The Arbitration Agreement Covers Plaintiff's Claims

Because federal policy favors arbitration, courts must resolve "any doubts concerning the scope of arbitrable issues … in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Here, the Arbitration Agreement broadly encompasses "[a]ny

---

[4] The Terms contain a choice-of-law provision that designates the "laws of the State of Texas." Karthik Decl., Exh. A (Terms), at 5. To the extent Texas law applies, it is similar to California law with respect to the contract issues relevant to this motion. *Garrett v. Hooters of Am., LLC*, 2022 WL 347619, at *2 (S.D. Tex. Jan. 5, 2022) (reciting elements of contract formation).

1  dispute *relating in any way to* your visit to our website or to products purchased here."

2  Karthik Decl., Exh. A (Terms), at 5 (emphasis added).

3    The Arbitration Agreement's "use of the 'related to' language is a signal that

4  the scope of the agreement is broad under Ninth Circuit case law and encompasses

5  claims beyond the four corners of the contract." *Delgado v. Progress Fin. Co.*, 2014

6  WL 1756282, at \*5 (E.D. Cal. May 1, 2014); *In re TFT-LCD (Flat Panel) Antitrust*

7  *Litig.*, 2011 WL 2650689, at \*5 (N.D. Cal. July 6, 2011) ("[T]he language 'related to'

8  must be read broadly" to encompass "matters that, while not arising directly under the

9  contractual relationship, are nevertheless related to it."). Accordingly, "Plaintiff's

10  claims need only 'touch matters' covered by the contract containing the arbitration

11  provision." *Koyoc v. Progress Fin. Co.*, 2014 WL 1878903, at \*4 (C.D. Cal. May 9,

12  2014). And here, they do.

13    As explained above, Plaintiff's claims fall within the scope of the Arbitration

14  Agreement because they constitute a "dispute relating in any way to [Plaintiff's] visit

15  to [Neiman Marcus'] website or to products purchased [through the website]."

16  Karthik Decl., Exh. A (Terms), at 5. The Arbitration Agreement covers Plaintiff's

17  claims, and she should be compelled to arbitrate them.

18    **D.** **Plaintiff's Class Claims Cannot Proceed**

19    The Court should dismiss Plaintiff's class claims and order the parties to

20  arbitrate solely on an individual basis. As the Supreme Court held in *Stolt-Nielsen*

21  *S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), arbitration "is a matter of

22  consent." Accordingly, courts cannot force parties into class proceedings to which

23  they did not agree. *Id.* Rather, parties "may specify *with whom* they choose to

24  arbitrate their disputes." *Id.* at 683 (emphasis in original). Stated differently, Neiman

25  Marcus "may not be compelled under the FAA to submit to class arbitration unless

26  there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684

27  (emphasis in original).

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California90071-2627

12

1    And here, Neiman Marcus did not agree to class arbitration; rather, the

2    Arbitration Agreement expressly prohibits class claims.  As shown above, the

3    Arbitration Agreement contains a class action waiver, and the Court should enforce it

4    according to its terms.  The United States Supreme Court has so held repeatedly.  *See*,

5    *e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-2312 (2013)

6    (FAA does not permit courts to invalidate arbitration agreements because they do not

7    permit class arbitration of federal claim); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463,

8    466-67 (2015) (FAA "pre-empts and invalidates" state law that would make a class

9    action waiver unconscionable in consumer contract of adhesion); *Concepcion*, 563

10   U.S. at 336, 352 (same).  Under settled United States Supreme Court precedent,

11   Plaintiff cannot proceed with her class claims before this Court or in arbitration.

**E.    The Lawsuit Should Be Dismissed—Or At The Very Least Stayed— Pending Arbitration Of Plaintiff's Individual Claims**

14   The Ninth Circuit empowers district courts "to dismiss a party's complaint

15   where the court finds that the arbitration clause ensnares all of the party's claims."

16   *Tate v. Progressive Fin. Holdings, LLC*, 2017 WL 4804354, at *4 (C.D. Cal. Oct. 24,

17   2017) (citing *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988);

18   *Azoulai v. La Porta*, 2016 WL 9045852, at *5 (C.D. Cal. Jan. 25, 2016)); *see also*

19   *Graf*, 2015 WL 4263957, at *6 ("Given that all of Plaintiff's claims are subject to

20   arbitration, this action is dismissed.").

21   As shown above, Plaintiff's Arbitration Agreement "ensnares" all of her claims.

22   Accordingly, the Court should dismiss this lawsuit in its entirety—including the

23   putative class claims—so the parties may arbitrate Plaintiff's claims on an individual

24   basis as agreed.  *See*, *e.g.*, *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169

25   (N.D. Cal. 2011) ("[T]he class action waivers are enforceable, which leaves only

26   Plaintiff's individual claims remaining in this action.  Since those claims are subject to

27   arbitration, dismissal is appropriate.").  At an absolute minimum, the Court should

28   stay the lawsuit pending arbitration.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

THE NEIMAN MARCUS GROUP LLC'S NOTICE OF
MOTION AND MOTION TO COMPEL ARBITRATION

1   **V.    CONCLUSION**

2          For these reasons, the Court should order Plaintiff to arbitrate the arbitrability of

3   her claims.  Alternatively, the Court should order Plaintiff to arbitrate such claims on

4   an individual basis.  Under either scenario, the Court should dismiss this lawsuit in its

5   entirety or, at the very least, stay it during the pendency of the arbitration.

6

7   Dated:  June 14, 2022                    **HUNTON ANDREWS KURTH LLP**

8

9                                            By:  ____/s/ Ann Marie Mortimer____
                                                  Ann Marie Mortimer
10                                                Jason J. Kim
                                                  Brandon M. Marvisi
11                                            Attorneys for Defendant
12                                            THE NEIMAN MARCUS GROUP
13                                            LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627